AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

FILED ENTERED
___ LODGED ___ RECEIVED

JUL 08 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>Four premises and a vehicle, more fully described in<br>Attachments A-1, A-2, A-3, A-4 and A-5 | )<br>)<br>)  Case No.  MJ19 – 311<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Four premises and a vehicle, more fully described in Attachments A-1, A-2, A-3, A-4 and A-5

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B for a List of Items to be Seized.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2314, 2315, 371, and 1956 | Interstate Transportation in Stolen Goods, Sale of Stolen Goods in Interstate Commerce, Conspiracy to Commit these Offenses, and Money Laundering |

The application is based on these facts:

✓ See Affidavit of Special Agent Ariana Kroshinsky, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Ariana Kroshinsky, Special Agent FBI
*Printed name and title*

⦿ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: July 8, 2019          _____
*Judge's signature*

City and state:  Seattle, Washington          Mary Alice Theiler, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

STATE OF WASHINGTON    )
                       )    ss
COUNTY OF KING         )

I, Ariana Kroshinsky, having been duly sworn, state as follows:

## I.    INTRODUCTION

### A. Background

1.    This affidavit is made in support of applications for warrants to search the locations specified below, for evidence of the crimes of interstate transportation in stolen goods, sale of stolen goods in interstate commerce, conspiracy to commit these offenses, and money laundering, in violation of 18 U.S.C. § 2314, 2315, 371, and 1956.  The centers of this criminal activity are two pawn shops, INNOVATION BEST and THRIFT ELECTRO, located in Kent and Renton, Washington (respectively), and a warehouse/office space in Kent.

2.    I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since January 2018. I am currently assigned to the Seattle Field Office, to a squad that covers transnational organized crime with ties to the Eastern Hemisphere. My training and experience includes investigations of federal criminal violations, including organized crime, internet-based crimes, money laundering, and transportation of stolen property. I have attended the FBI Special Agent Training Course, and I have participated in several internet crime investigations. Prior to joining the FBI, I was employed by the U.S. Department of State, where I specialized in Eastern European affairs.

3.    The facts in this affidavit come from my personal observations, my training and experience, information obtained from other federal agents, from local police officers and retail Loss Prevention Officers, interviews of cooperating witnesses, reviews of documents and records related to this investigation, and communications with others who have personal knowledge of the events and circumstances described herein. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of

Affidavit of Special Agent Ariana Kroshinsky – 1
USAO# 2018R01308

1   the application for a search warrant, it does not set forth each and every fact that I or
2   others have learned during this investigation. I have set forth only the facts I believe are
3   necessary to establish probable cause to believe that evidence, fruits and instrumentalities
4   of violations of the crimes set forth in Paragraph 9 will be found at the locations set forth
5   in Paragraphs 10-14.

6                    **B. Case Summary**
7           4.      This investigation has revealed that two pawnshops, INNOVATION BEST
8   (located in Kent, Washington) and THRIFT-ELECTRO (in Renton, also known as BUY-
9   TRADE and BY-TRADE), and their employees, have been paying cash for stolen
10  property, buying from shoplifters who primarily steal from brick and mortar retail stores
11  (Home Depot, Lowes, Fred Meyer, etc.), from delivery drivers who stole from
12  Amazon.com, and from drug addicts and drug users. Members of the conspiracy transport
13  the stolen products from these two pawnshops to a warehouse in Kent, Washington, from
14  which the products are transported by the United States Postal Service (USPS), United
15  Parcel Service (UPS), and other mail carriers, at times estimated to be in bulk shipments
16  valued at more than $5,000. The products are stored in Kent or in Amazon.com
17  (hereafter, "Amazon") fulfillment centers located outside the state of Washington, and
18  are sold in interstate commerce via Amazon's website using seller names such as
19  "Bestforyouall" or Freeshipforyou." Amazon has disbursed funds back to bank accounts
20  under the control of members of this conspiracy, which bank accounts are used to
21  promote the carrying on of the criminal activity under investigation. These funds also
22  appear to be used to conceal the nature of the unlawful activity, by making the pawn
23  shops appear like a legitimate business, when in fact the pawn shops are front enterprises
24  for the conspiracy, and are permeated with fraud and conduct virtually no legitimate
25  business beyond buying and re-selling stolen property. The value of property involved in
26  this case has reached well into the millions of dollars since this criminal activity began,
27  which is estimated to be during the years 2013-2014.
28

Affidavit of Special Agent Ariana Kroshinsky – 2
USAO# 2018R01308

5.      ALEKSANDER PAVLOVSKIY (DOB: 03-24-1975) is considered the leader of this conspiracy. Washington State Department of Revenue (DOR) records show PAVLOVSKIY as the "governing" person for THRIFT ELECTRO, INNOVATION BEST, and EURODEALS, LLC. He is listed on Amazon records as the account holder/operator on two businesses which sell products on Amazon, "Farless Wholesale," and "RT Trading, LLC." He is also listed as the account holder on all bank accounts to which Amazon sends payment for the items sold in this conspiracy. Based on surveillance and pole cameras in this case, investigators and I have also determined that PAVLOVSKIY routinely arrives at the INNOVATION BEST retail store in Kent early on Friday mornings, where he personally loads property and transports it to the Kent warehouse. PAVLOVSKIY is Ukrainian by birth and entered the United States as a refugee in November 2000 with his wife Nadezhda PAVLOVSKAYA and their children. He was naturalized in the United States in September 2011 and is a US citizen.

### C. Washington State Laws, Pawn Shop Operations, and Terms

6.      Pawn shops in Washington State are governed by the Revised Code of Washington (RCW), Chapter 19.60, titled "Pawnbrokers and Secondhand Dealers." RCW 19.60.020 imposes a "duty to record information" on pawnshops operating in Washington. This law states, "Every pawnbroker and secondhand dealer doing business in this state shall maintain wherever that business is conducted a record. . ." of the following information:

- The signature of the person with whom the transaction is made;

- The date of the transaction;

- The name of the person or employee or the identification number of the person or employee conducting the transaction;

- The name, date of birth, sex, height, weight, race, and address and telephone number of the person with whom the transaction is made;

Affidavit of Special Agent Ariana Kroshinsky – 3
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- A complete description of the property pledged, bought, or consigned, including the brand name, serial number, model number or name of the item;

- The price paid or the amount loaned;

- The type and identifying number of identification used by the person with whom the transaction was made, which shall consist of a valid driver's license or identification card issued by any state or two pieces of identification issued by a governmental agency, one of which shall be descriptive of the person identified. At all times, one piece of current government issued picture identification will be required; and

- The nature of the transaction, a number identifying the transaction, and name and address of the store purchasing the item.

7.    **Terms Used in this Affidavit**

**(a) "LeadsOnline"** is a database used by pawnshops in Kent, Auburn, Renton, and other Washington cities, to record the above data. LeadsOnline is an internet-based system, requiring the use of computers to input the data. Auburn Police detectives used LeadsOnline during this investigation. Although not required by Washington State law, investigators learned that pawnshop clerks involved in this conspiracy took photographs of many items pawned, which photos were uploaded into LeadsOnline. Accordingly, references within this affidavit to photographs examined by police refers to photos in LeadsOnline.

**(b) Anti-theft stickers** are placed on products by retailers to deter theft and prevent the resale of retail property.

**(c) "Spider Wire"** or **spider wrap** is a theft deterrent placed on high value, high theft items in retail stores. It is typically a black wire around all four sides of a box, attached in the middle to an electronic device. Spider wrap is removed by store employees at a cash register when a legitimate purchase is made, or else a sensor will set off an alarm when the wrapped item is exiting a store. Items still

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

wrapped in spider wrapped outside a retail store are indicative that the items are most likely stolen.

8.   **Background about pawnshops.**  Auburn Police detectives involved in this case have spoken to dozens of pawn shop managers and employees, and have visited dozens of pawn shops, during their careers. They have learned that pawn shops which operate legally usually purchase *used* items and re-sell them on store shelves in retail shops that are open to the public. Many pawnshops conduct "No Buy" checks to see if the seller is on a police "no buy" list, indicating the seller has been recently convicted of drug and/or theft crimes. If a pawn shop believes a fake ID or stolen property is being presented, they will deny the transaction. Used items have values which have depreciated over time, making a twenty cents on the dollar exchange reasonable. Pawnshops operating legally do not purchase items which have anti-theft stickers or spider wrap still on the packaging, because these are indicia of stolen property. People who legally pawn or sell items to a pawn shop usually sell items which are used and not new in the box.

## II.   CRIMES UNDER INVESTIGATION AND LOCATIONS TO BE SEARCHED

### A. Crimes Under Investigation

9.   For each property, I am requesting a warrant to seize documents, records, computers and electronic devices, currency, retail products that are new and in original packaging, and other items, specified in Attachment B, that constitute evidence, fruits, and/or instrumentalities of the following crimes:

18 U.S.C. § 2314    (Transportation of stolen goods in interstate commerce);

18 U.S.C. § 2315    (Sale of stolen goods in interstate commerce);

18 U.S.C. § 371    (Conspiracy); and

18 U.S.C. §1956    (Money laundering).

Affidavit of Special Agent Ariana Kroshinsky – 5
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### B. Locations to be Searched

**Location 1:  INNOVATION BEST (Business Premises)**
**25628 and 25630 102nd Pl SE, Kent, Washington**

10.     Location 1 (INNOVATION BEST) is located at 25628 and 25630 102nd Pl SE, Kent, Washington, and consists of two adjoined units within a multi-business, strip-mall complex, further described in Attachment A-1. INNOVATION BEST first registered an account with LeadsOnline on January 18, 2017, using an address of 25616 – 102nd Place SE, Kent, which is in the same retail complex as Location 1.

**Location 2:  INNOVATION BEST (Storage and Office Premises):**
**22710 72nd Avenue South, Suite 109, Kent, Washington 98032**

11.     Location 2 is a storage facility and adjacent office premises, further described in Attachment A-2. According to Washington State Department of Revenue (WA-DOR) online records, the WA-DOR issued a business license for "INNOVATIONBEST" (all one word) on December 13, 2016. The only governing person listed for this business is "Alex Y PAVLOVSKIY," and the WA-DOR website lists Location 2 as both the "Location Address" and "Mailing Address" for "INNOVATIONBEST, LLC."

**Location 3:  BUY-TRADE/THRIFT-ELECTRO (Business Premises):**
**20 Southwest 7th Street, Unit J, Renton, Washington 98057**

12.     Location 3 is one unit within a single-story, retail strip mall, further described in Attachment A-3. According to Washington State Department of Revenue (WA-DOR) public records for Thrift-Electro, the WA-DOR first issued a business license for THRIFT-ELECTRO, INC. on December 15, 2017. The only governing person listed for this business is "Alexandr PAVLOVSKIY." The WA-DOR website lists two separate addresses for THRIFT-ELECTRO, INC: a "Location Address" of 1171 Kirkland Avenue NE, Renton, WA 98056, and a "Mailing Address" of 22710 72nd Avenue South, Suite 109 Kent, WA 98032 (this mailing address is the storage/office premises of

Affidavit of Special Agent Ariana Kroshinsky – 6
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  INNOVATION BEST, Location 1, above). Buy Trade first registered an account with
2  LeadsOnline on July 16, 2013, under the name "Buy Trade, LLC," listing a "contact" of
3  Alexsandr Pavlovskiy. Thrift Electro's business license states: "By Trade," 20 SW 7th St,
4  Suite J, Renton, Washington."

5  **Location 4:   The residence of ALEKSANDR PAVLOVSKIY:  30323 – 110th Place**
6  **S.E., Auburn, Washington 98092**

7  13.    Location 4 is a two-story, single family residence, further described in
8  Attachment A-4. King County Assessor records show Location 4 was purchased by
9  "ALEKSANDR" PAVLOVSKIY and NADEZHDA PAVLOVSKAYA on June 1, 2018
10  for $450,000. These records indicate Location 4 is a four-bedroom, single-family home
11  built in 1999.

12  14.    **Vehicle 1:**  Vehicle 1 is a Grey, Mercedes Benz, "Sprinter" model transport
13  van, Washington State license plate number C20127G, VIN # WD4PE8DD8GP234633.
14  According to Washington State DOL records, the van is registered to THRIFT
15  ELECTRO at the address of Location 3.

16  **III.    SUMMARY OF INVESTIGATION**

17  **A.    The Auburn Investigation Begins:  Summer 2018.**

18  15.    **JW Logistics Employee Muthana Haidar.**  In July 2018, Auburn Police
19  Detective Eric Mattson was reviewing LeadsOnline data when he noticed that Muthana
20  Haidar had made 57 pawn shop transactions between February and July 2018.  Of the 57
21  transactions, 48 took place at INNOVATION BEST. The property Haidar sold included
22  new, in the box electronics, household goods, gaming systems, computer products, tools,
23  kitchenware, sporting goods, and sewing machines, which Auburn police valued at
24  several hundred thousand dollars. Per LeadsOnline, Haidar received a total of $27,714 for
25  the items he sold to INNOVATION BEST, as well as $2,305 from two other pawnshops,
26  Cash America and Gold-Silver Traders, for a grand total of $30,019.

27  16.    Detective Mattson contacted Amazon Loss Prevention Officers (LPO's),
28  who confirmed that Haidar was employed by JW Logistics (JWLO) as a truck driver, and

Affidavit of Special Agent Ariana Kroshinsky – 7
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  was contracted with Amazon out of their Kent, Washington warehouse (called BFI5).

2  Amazon LPO's began an internal investigation into Haidar and determined that Haidar

3  had been stealing property from Amazon customer returns, which he picked up from Sea-

4  Tac airport and when he was delivering orders to the US Post Office. On August 3, 2018,

5  Amazon LPO's interviewed Haidar at the Kent/BFI5 warehouse. When confronted,

6  Haidar initially said he did not know about the thefts. After being confronted again,

7  Haidar replied, "I can pay back."  When asked what he meant by "pay back," Haidar

8  would not elaborate. By reviewing Amazon delivery records, customer reports of lost

9  property or property never delivered, and LeadsOnline data, detectives and Amazon

10  LPO's determined that all the property Haidar had sold to INNOVATION BEST had

11  been stolen from Amazon deliveries. Haidar was arrested and booked into jail for this

12  offense, but was released at the request of Auburn Police so as not to disrupt the larger

13  investigation. He was not offered any promises or benefits to gain his release, and

14  officers have not contacted him since his release, pending completion of this

15  investigation.

16      17.    **JW Logistics Employee Abbas Zghair.**  In August 2018, Amazon LPO's

17  contacted Auburn police about a second employee of JWLO, Abbas Zghair, who Amazon

18  estimated had stolen around $100,000 in property. The LPO's reported that Zghair and

19  Haidar had possibly been living together, and they theorized that the two may have been

20  working together as a team when committing the thefts. Amazon LPO's reported Zghair

21  committed these thefts using the same method as Haidar, by focusing on Amazon returns

22  picked up from Sea-Tac airport and deliveries to the US Post Office. According to

23  LeadsOnline, police found Zghair had conducted 60 transactions at INNOVATION

24  BEST between February 7, 2018 and July 7, 2018, and had sold around $100,000 worth

25  of property, including personal electronics, household goods, gaming systems, computer

26  products, sporting goods, etc., all of which was new and in its original packaging. Zghair

27  received $19,306 from INNOVATION BEST for the stolen Amazon property.

28

Affidavit of Special Agent Ariana Kroshinsky – 8
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18.     **Peter Shalhoob.** Separate from the Haidar/Zghair investigation, in August 2018, a Fred Meyer Organized Retail Crime (ORC) Investigator, Maria McGuiness, contacted Auburn Police Detective Dave Lind, and advised him Fred Meyer LPO's in Kent, Washington had identified Peter Shalhoob as stealing a large number of items from that store, and it appeared to be related to ORC. McGuiness stated Shalhoob was stealing large volumes of Oral B tooth brushes, Fire Alarms, Zyrtec allergy medication, and other items. On August 8, 2018, Auburn detectives interviewed Shalhoob, who admitted he was using heroin and stole in order to fund his drug habit. Shalhoob explained that he shoplifted items from local businesses such as Fred Meyer, Lowes, Home Depot, and Walmart, and sold the items to INNOVATION BEST (Location 1).

19.     When detectives asked if he had ever been directed to steal a certain product, Shalhoob responded that on one occasion, he stole Zyrtec (allergy pills) 30 count bottles and attempted to sell them INNOVATION BEST. The clerk told him they did not want 30 count bottles, but would purchase 70 count bottles if he brought them in. Shalhoob then stole several bottles of 70 count Zyrtec, which the clerk then purchased. Detectives checked LeadsOnline, which data corroborated Shalhoob's statement, showing that on July 26, 2018, INNOVATION BEST purchased 70 count bottles of Zyrtec from Shalhoob, along with Crest Strips, Claritin, Oral B toothbrushes, and Carbon Monoxide Alarms. During that transaction, Shalhoob received $180.00 from INNOVATION BEST.

20.     Detectives reviewed all transactions made by Shalhoob over a thirty-day period (July 14 to August 13, 2018), and found that Shalhoob had been to INNOVATION BEST sixteen (16) times during that 30 day period, receiving a total of $1,835.00 in cash for selling products. On average, he was paid thirty-two cents for every dollar of full retail value for the items he sold, based on detective research and estimates. On August 13 alone, LeadsOnline indicated that Shalhoob sold a Sonicare toothbrush, four boxes of "Alli" brand weight loss capsules, a Braun Thermoscan, and a box of Crest Whitestrips. Doing online research of third party retailers such as Ebay, and primary

Affidavit of Special Agent Ariana Kroshinsky – 9
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  retailers such as Target and Walmart, detectives determined that the total (average) retail
2  price for all the items Shalhoob sold to INNOVATION BEST on August 13 was $538.43.
3  According to LeadsOnline, Shalhoob received $75.00 for these items.

4      21.    **One day sales at INNOVATION BEST and THRIFT ELECTRO.**  In
5  order to obtain a better idea of daily transactions for the two pawnshops under
6  investigation, Auburn detectives examined LeadsOnline data for all transactions at these
7  two locations occurring on one day chosen at random, August 13, 2018. Detectives
8  determined that on August 13, INNOVATION BEST logged 31 total transactions and
9  paid $3,958.00 to sellers. Detectives determined that all but two of the items were new,
10  unused, and still in original packaging. Using an average online price, detectives
11  determined these products retailed new for an average (total) of $15,611.36.
12  LeadsOnline data also showed that THRIFT-ELECTRO had logged 11 transactions and
13  paid $891.00 to the sellers on August 13. All of the items sold appeared to be (based on
14  LeadsOnline photos) new, unused, and still in original packaging. Using an average
15  online sales price, detectives found that these products retailed new for an average (total)
16  cost of $2,708.07.

17      **B.**    **Controlled Sales to INNOVATION BEST: August-September**
18          **2018.**

19      22.    **Controlled Sale #1:  August 24, 2018: Failing to Log Serial Numbers.**
20  In August and September 2018, Auburn detectives and Fred Meyer and Home Depot
21  LPO's conducted a series of controlled sales to INNOVATION BEST to assess whether
22  employees would overlook pawn shop laws and regulations. The first controlled sale
23  occurred on August 24, 2018, using a NEST brand thermostat provided by Home Depot
24  LPO's, with an average retail value of between $220 and $250. The NEST was marked
25  with a manufacturer's serial number, visible from outside the box, and was still wrapped
26  in the store packaging, obviously never having been opened. On August 24, Home Depot
27  LPO Henry Roland entered INNOVATION BEST and was greeted at the front
28  window/counter by a female clerk who was later listed in LeadsOnline as "Tanya." When

Affidavit of Special Agent Ariana Kroshinsky – 10
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Roland offered to sell the NEST, the woman offered him $60. He attempted to get $80,
2   but the woman refused. After Roland agreed to $60, the woman asked to see his
3   identification. After viewing his ID, the woman told Roland the photo did not look like
4   him, and she said she did not think it was him. Roland reported that the female completed
5   the transaction anyway, giving him $60 cash. Detectives later checked LeadsOnline and
6   found the transaction listed as #8378, occurring at 12:44 p.m. Detectives noted that the
7   NEST serial number was not listed in LeadsOnline as required by RCW 19.60.020, and
8   which logging would aid law enforcement in tracking the item.

9       23.     **Controlled Sale #2: August 28, 2018: Ignoring Anti-Theft, No-Resell**
10   **Stickers.** On August 28, 2018, detectives conducted another controlled sale to
11   INNOVATION BEST. Fred Meyer LPO's provided three, brand new, in the box, Oral B
12   electronic toothbrushes, with an average total retail value of $208.97. One of the
13   toothbrushes had an anti-ORC sticker on it that read, "Thank You For Buying @ Fred
14   Meyer, If found for resale elsewhere call 1-800-689-4609." LPO Roland conducted the
15   controlled sale, entering INNOVATION BEST and selling the three toothbrushes for $40
16   cash. After the sale, Roland informed Auburn police that he dealt with the same female
17   clerk as on August 24. Roland reported that the clerk did not seem to care about the anti-
18   theft sticker placed conspicuously on the toothbrush. The $40 was given to Fred Meyer
19   LPO's to offset the cost of the investigation. Detectives checked LeadsOnline and found
20   the transaction had been logged under transaction# 8473. Detectives also checked an
21   online sales website ("Offerup"), and found several Oral B Power models for sale at $75
22   each. This controlled sale corroborated the illicit nature of INNOVATION BEST, whose
23   employees should know that it is not reasonable for a person to sell three toothbrushes for
24   a total of $40 (vs. the total value of $208.97), when they could sell the same items on a
25   website like Offerup for $75 each.

26       24.     **Controlled Sale # 3: August 30, 2018: Directing Sellers to Purchase**
27   **Specific Products, and Failing to Check ID.** On August 30, Fred Meyer LPO Roland
28   entered INNOVATION BEST with three packages of "30 count" Zyrtec allergy

Affidavit of Special Agent Ariana Kroshinsky – 11
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   medication. As he approached the door, Roland observed a male and female enter the
2   store ahead of him and approach the counter before him. Detectives later identified the
3   female as Tabernay Simon, and found the transaction logged on LeadsOnline. Simon
4   presented a foil-lined bag full of Allergy medication, thermometers, and other new, in the
5   box retail items. It is common for shoplifters to hide merchandise in foil-lined bags, as it
6   is believed that this helps bypass security sensors at the doors. As the female clerk told
7   Simon how much they would pay her, the male stepped up to the window, removed
8   additional items from inside his coat, and asked if he could sell the items. Roland
9   observed that the male's items were similar to what the female presented. The male
10  agreed to sell the items and the clerk came to the window with two bundles of money,
11  one for the female and one for the male. Roland noted that the male never produced an ID
12  for the clerk to check, nor signed any paperwork, as required by RCW 19.60.020.  The
13  female signed all paperwork.

14       25.     After the couple left, Roland presented the "30 count" Zyrtec packets to the
15  clerk, who told him that she would not buy them, but wanted "70 count" packets instead,
16  just as in Shalhoob's case. Roland left the store, waited approximately fifteen minutes,
17  and returned with three, "70 count" Zyrtec packets, valued at $34.99 each. Detectives
18  surmised that the fifteen minute time period would be long enough for a shoplifter to visit
19  a nearby retail store, but too short for anyone to legitimately acquire pills and quickly re-
20  sell them. The clerk gave Roland a total of $13 cash for the $104.97 worth of Zyrtec. This
21  transaction corroborated the illicit nature of INNOVATION BEST, whose employees
22  should have known that no reasonable person would return in under twenty minutes, after
23  being denied a sale, with several bottles of brand new, "70 count" pills valued at more
24  than $100, and sell them for $13.

25       26.     **Controlled Sale # 4: September 4, 2018:  Ignoring Anti-Theft, No**
26  **Resell Stickers.** The fourth controlled sale occurred on September 4, 2019. During this
27  transaction, detectives placed anti-theft/anti-re-sell stickers on three brand new, in the
28  box, Oral B Toothbrushes to see if INNOVATION BEST clerks would deny the sale.

Affidavit of Special Agent Ariana Kroshinsky – 12
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  The stickers read "Thank you for buying @ Fred Meyer, if found for resale elsewhere call
2  1-800-689-4609." Retailers place these stickers on commonly stolen items in order to
3  thwart theft and resale. The stickers are bright white, black, and red and are
4  approximately the size of two quarters. When looking at the product, they are very
5  visible. The transaction took less than five minutes. Roland stated the clerk, identified in
6  LeadsOnline as "Tanya," said nothing about the stickers and purchased all three items for
7  $34. Detectives and LPO's determined that the total retail value of the items was
8  $215.97, had they been sold at Fred Meyer.

9      27.    **Controlled Sale #5:  September 5, 2018: Ignoring "spider wrap."**  On
10  September 5, 2018, detectives and LPO's conducted another controlled sale of new tools:
11  a new, in the box, 4-tool combo back of Milwaukee tools valued at $429.99; a new, in the
12  box Milwaukee PVC pipe shearing tool, valued at $139.99; and a new, in the box
13  Milwaukee cordless hand saw valued at $149.99. Detectives determined that the total
14  retail value for these items was $719.97 if sold in Home Depot. The cordless hand saw
15  was still wrapped in an anti-theft "spider wrap." Roland and an Auburn police detective,
16  dressed in plain clothing, entered INNOVATION BEST with the three items, including
17  the spider wrapped item. The female clerk accepted all three items, giving Roland $155
18  cash.  Roland and the detective watched the clerk take the still-spider-wrapped item to the
19  back store room of INNOVATION BEST. The clerk made no mention of the security
20  device on the tool, and completed the transaction without discussing it. Detectives
21  reviewed the transaction log and found it listed under transaction #8646. This transaction
22  corroborated the illicit nature of INNOVATION BEST, as its employees were willing to
23  buy new, in the box products still wrapped in anti-theft spider wrapping.

24      C.    **LeadsOnline Transaction Data and High Volume Sellers**

25      28.    Auburn Detectives obtained LeadsOnline data for three business entities:
26  INNOVATION BEST, THRIFT ELECTRO, and BY-TRADE (in LeadsOnline it was
27  listed as "BUY-TRADE") for October 2013 to May 23, 2019. According to LeadsOnline,
28

Affidavit of Special Agent Ariana Kroshinsky – 13
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | during this time period, the three businesses paid $4,125,490.13 to sellers who sold
2 | 47,536 separate items. Some of the highest volume sellers were: (a) Andrea Phillips, who
3 | received $57,988 in 1182 separate transactions at INNOVATION BEST. She also
4 | received $35,958 from THRIFT-ELECTRO in 176 separate transactions; (b) Todd
5 | Sherman, who received a total of $37,081 in 240 separate transactions at INNOVATION
6 | BEST; (c) Maranda Hovey, who received $61,196 from THRIFT-ELECTRO in 525
7 | separate transactions. Approximately fifty different sellers have received over $10,000 at
8 | these pawnshops during this timeframe, and several hundred sellers have received well
9 | over $1,000 each.

10 |     29.    **Myo Aung.**  In September 2018, Auburn Detective Mattson was reviewing
11 | LeadsOnline data regarding the pawn history of Myo Aung. He noticed that between June
12 | 12, 2018 and September 20, 2018, a period of 100 days, Aung sold property to
13 | INNOVATION BEST on 88 of those days. The property sold by Aung was all brand new
14 | and in its original packaging, and consisted of items such as allergy medication, razors,
15 | electric toothbrushes, smoke detectors, hair treatment shampoo, LED lights, pain
16 | medication, ink cartridges, small electronics, small kitchenware items, teeth whitening
17 | strips, water filters and other items an individual could find in retail stores. According to
18 | LeadsOnline, the property sold by Aung had a retail value of approximately $40,000, yet
19 | Aung received $9,665 in payments from INNOVATION BEST. LeadsOnline also
20 | recorded that Aung had sold property at a pawn shop called "Make a Deal," in Kent,
21 | Washington. LeadsOnline data showed that the clerk who handled the transaction at
22 | "Make a Deal" was Alexander Sorochuk, who detectives knew used to work at
23 | INNOVATION BEST (based on LeadsOnline data and business records). Sorochuk had
24 | been the INNOVATION BEST clerk who handled many of the transactions with Haidar
25 | and Zghair. The property sold by Aung to "Make a Deal" was similar to the products
26 | Aung had sold to Innovation Best.

27 |     30.    On June 12, 2019, Myo Aung was arrested at a Renton Fred Meyer for theft
28 | of more than $800 worth of supplements, allergy medication, and other items.  These are

Affidavit of Special Agent Ariana Kroshinsky – 14
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | the same types of products he had been selling to INNOVATION BEST for the past year.
2 | During his interview with Fred Meyer LPO's, Aung admitted using heroin and
3 | methamphetamine, and acknowledged he had been arrested several weeks before at the
4 | Kent Fred Meyer. Aung told the LPO's that he had been selling stolen property at a pawn
5 | shop "near the Renton Fred Meyer," and to a "Russian" who he only knew as "Alex."
6 | The Fred Meyer in Kent is located approximately two miles from Location 1.

7 |       31.    **May Khello.** On February 25, 2019, Detective Mattson responded to a
8 | Safeway store in Auburn, Washington, in response to an alleged robbery. A female
9 | suspect who had identified herself as Narwaz F. Khello was in custody and had agreed to
10 | speak with detectives. Mattson was familiar with Narwaz Khello and had been tracking
11 | multiple sales she had made of retail items such as Masterlocks, Oral B toothbrushes,
12 | creams, and other items, to INNOVATION BEST. Mattson determined that the female
13 | was actually May F. Khello, who agreed to provide a Mirandized statement. Khello
14 | reported that she and two female friends had been committing thefts at several stores in
15 | King County for the past several months. Though Khello was not willing to provide the
16 | names of her friends, Mattson later contacted her mother, Almaza Kadur, who provided
17 | the first names of the friends as "Mercedes" and "Cashmere." Using LeadsOnline,
18 | Mattson was able to identify the two as Mercedes Renfro and Cashmere Shabazz. Khello
19 | stated she had been using her older sisters' driver's license to sell the stolen property
20 | because she was under eighteen.

21 |       32.    Khello told police that her group targeted Fred Meyer stores and focused on
22 | stealing vitamin supplements, allergy medications, locks, electric toothbrush heads, hair
23 | products, skin cream, and makeup. Khello said they would take the stolen property to a
24 | shop in Kent run by "Russians," who would "buy everything they had." Khello could not
25 | provide the name of the shop, but said it had a sign in front that said, "Gold and Silver."
26 | She described the location as being next to a "nail salon and a bar." Her description was
27 | consistent with Location 1; INNOVATION BEST is located in between  a nail salon and
28 | "Carriage Bar & Grill," and has a "Gold & Silver" sign affixed to the building above its

Affidavit of Special Agent Ariana Kroshinsky – 15
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  entry door. When Mattson asked Khello if the individual who purchased the stolen
2  property ever asked how it came into her possession, she replied, "No, they never ask
3  anything." When asked if she ever told employees of INNOVATION BEST that the
4  property she was selling was stolen, she replied, "No, you would never tell them that, but
5  they know it's all stolen, how could you not know? You should see all the stuff people
6  bring in that place and it's all stolen."

7      33.      According to LeadsOnline, the transaction history of Khello, Renfro, and
8  Shabazz showed the following sales by each woman at INNOVATION BEST:

| Seller | Transactions | Amount Received |
|---|---|---|
| May Khello | 27 | $2,243 |
| Mercedes Renfro | 125 | $13,966 |
| Cashmere Shabazz | 37 | $2,475 |

14  Mattson noted that most transactions occurred on the same date and time for all three
15  women. LeadsOnline data also corroborated Khello's statement, showing that property
16  sold by the trio consisted of the same products Khello had described during her interview.

17      34.      **R.D.**  On June 5, 2019, I interviewed a cooperating witness identified as
18  RD, together with Auburn Detectives and an Assistant United States Attorney. RD agreed
19  to provide a statement without Miranda rights and with no promises, although he was
20  informed that he was not a target of this investigation. RD informed us that he had
21  worked for Boeing for 23 years, after which he had fallen on hard times, eventually
22  becoming addicted to heroin. In order to feed his heroin habit, RD turned to pawning
23  items. RD informed us that he had heard about pawnshops operated by "The Russians,"
24  who would buy things, "no questions asked." In 2018, RD visited the parking lot of
25  Location 1 and found a man who RD described as a white male with short blonde hair
26  and blue eyes. The man asked RD if RD possessed a valid Washington state
27  identification. When RD said he did, the man asked him to sell some items inside
28  Location 1. RD sold between three and five K&D brand automotive air filters, which RD

Affidavit of Special Agent Ariana Kroshinsky – 16
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  estimated as retail value of $40-$60 each, inside Location 1. RD said the female clerk,

2  "Asked me if it was mine," referring to the air filters, but otherwise never asked any other

3  questions. RD said he received between $10 and $15 each for the filters. He gave the

4  profits to the blonde male, who in turn gave RD $20 for assisting him. RD said he used

5  the profits to feed his heroin habit.

6      35.    RD said he returned to Location 1 numerous times over the next eight

7  months, always selling K&D brand automotive air filters, always receiving between $10

8  and $15 for each filter. RD assumed the property was stolen because it was new, in the

9  box, and he was receiving and selling the exact same product repeatedly over the course

10 of eight months. He said he saw many other people selling items at Location 1 including

11 "sacks of vitamins" and other new, in the box items. RD said the only *used* property that

12 Location 1 would buy were tools, and he reported that INNOVATION BEST would only

13 buy items valued at more than $15. Upon being shown Washington DOL photos, RD

14 identified Svetlana PAVLOVSKAYA and Daria Dolgova as two of the clerks at Location

15 1 who bought his property. According to multiple databases, Svetlana Pavlovskaya is the

16 daughter of Aleksander PAVLOSKY and Nadezhda PAVOLVSKAYA. Using

17 LeadsOnline, Auburn Detectives determined that RD had sold items at Location 1 a total

18 of 126 separate times, receiving a total of $7,500, over the course of approximately eight

19 months. RD said he stopped selling items at Location 1 in early May 2019, when Auburn

20 detectives contacted him about this case.

21          **D.    Police Surveillance.**

22      36.    **On July 5, 2018**, Auburn police conducted surveillance at INNOVATION

23 BEST (Location 1) and observed Vehicle 1 parked in front of the store. Through a

24 Washington DOL check, they learned that Vehicle 1 was registered to Thrift-Electro,

25 Renton, Washington. After Vehicle 1 parked, a female, identified by DOL photos as

26 PAVLOVSKIY'S wife, Nadezhda Pavlovskaya, exited and opened the back doors of the

27 van. The detective could see several brown crates in the back of the van. A short time

28 later, a female exited Location 1 and assisted Pavlovskaya in removing the crates from

Affidavit of Special Agent Ariana Kroshinsky – 17
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the van and carrying them into Location 1. The detective recognized these crates as being
2  similar to crates detectives had observed in photographs on LeadsOnline, which clerks
3  had logged in after purchasing stolen property from Muthana Haidar.

4      37.    **On August 14, 2018,** Auburn police detectives conducted surveillance of
5  Location 1 in an attempt to see what sort of business they conducted on a typical day. At
6  approximately 12:15 p.m., they observed an Oldsmobile pull into the parking lot and park
7  in front of Location 1. A female got out of the car and removed a large box from the back
8  seat. Detectives could see the box was a brand new set of halogen painter's lamps, still in
9  their original box. A DOL check of the vehicle indicated it was registered to Shatoya
10  Talbert. Police records showed that Talbert had been contacted at Fred Meyer in Auburn
11  in September 2017, and was arrested on a Federal Way Theft warrant.

12      38.    **On August 15, 2018,** detectives surveilled Location 1 and observed an
13  SUV pull in and park. Two females exited, removed several new, in the box items from
14  the SUV, and carried them into Location 1. One item was a large aquarium filter, which
15  detectives knew to be worth well over $100 new in stores. After a few minutes, both
16  females exited the store without any of the items, and departed. A detective later
17  reviewed LeadsOnline and found that INNOVATION BEST had logged the sale and
18  recorded giving the seller, Sara Lockman $670 for Aquarium filters, musical recording
19  equipment, bike equipment, LED lights, and other items. A further review of Lockman's
20  pawn history revealed that she had sold to Innovation Best seventeen times since January
21  2018, receiving an average of $250 from the store clerks. Many transactions involved
22  high priced aquarium filters and equipment, all of it new.

23      39.    **On August 30, 2018.** Auburn police conducted surveillance at Location 1
24  on 30 August 2018 when they observed a Ford Taurus pull into the parking lot. Three
25  men exited the Taurus, opened the trunk, and removed property, including a Shark
26  Vacuum cleaner, a Honeywell air cleaner, three Coleman inflatable bed mattresses, and
27  several small boxes of other items.  All of the property appeared to be brand new and in
28  its original packaging.  Using LeadsOnline, police later confirmed that someone named

Affidavit of Special Agent Ariana Kroshinsky – 18
USAO# 2018R01308

1 | Rickey Millen-Sparks had sold these items at INNOVATION BEST, all of it new and in
2 | original packaging. A copy of this sale and photographs was uploaded to the case.
3 | Innovation Best paid $290.00 for those items, but an online search revealed the items
4 | would retail for an average total of approximately $970.00.

5 |     40.    Four days later, on September 4, 2018, Auburn Police Detective Aaron
6 | Ernst was conducting surveillance at Location 2 (the warehouse in Kent), when he
7 | observed Vehicle 1 (the Mercedes Sprinter van), back its way up the right-side ramp of
8 | Location 2 and park inside the warehouse, after which, someone closed the roll-up door
9 | behind the van. Approximately one hour later, someone opened the left-side roll up door
10 | at Location 2. Detective Ernst could see that a large amount of property had been placed
11 | on the warehouse floor in front of this left-side door. Some of the property had been
12 | partially covered with what appeared to be a large blanket. The officer observed three
13 | Coleman inflatable air mattresses in their distinctive green boxes stacked up next to the
14 | property under the blanket. These boxes were consistent in appearance with the three
15 | boxes officers had observed being brought in and sold to INNOVATION BEST on
16 | August 30, 2018.

17 |     41.    **On September 4, 2018,** Auburn detectives surveilled the previous location
18 | of Thrift Electro (at 1171 Kirkland Ave NE, Renton), when they observed Vehicle 1
19 | parked behind the store with the back doors open. They observed Alexander
20 | PAVLOVSKIY remove several items from Vehicle 1 and carry the items into the store.
21 | They then observed PAVLOVSKIY drive Vehicle 1 from Thrift Electro directly to
22 | Location 2, where he backed the van onto the right-side ramp; the roll-up door opened
23 | and he backed inside. After about an hour, the roll up door closed, with the van still
24 | inside. From his vantage, Detective Mattson could clearly see into the open warehouse
25 | door; he observed large pallets of retail merchandise inside Location 2, similar to the
26 | items bought at INNOVATION BEST and THRIFT ELECTRO. Detectives were at
27 | Location 2 for several hours and did not observe the van (Vehicle 1) leave.

28 |

Affidavit of Special Agent Ariana Kroshinsky – 19
USAO# 2018R01308

42.   **On (Friday) September 21, 2018**, Auburn Detective Ernst was conducting surveillance at Location 1 when he observed Vehicle 1 (the Sprinter Van) arrive and back up to the front door. Detective Ernst observed Aleksander PAVLOVSKIY load boxes from the store into the back of the van for approximately one hour. After Vehicle 1 was loaded from floor to ceiling, PAVLOVSKIY left. Detective Ernst maintained surveillance on the van and watched PAVLOVSKIY drive it directly from INNOVATION BEST to Location 2. Detective Ernst watched the van back up to the right-side roll up door at Location 2. When the door opened, PAVLOVSKIY backed Vehicle 1 inside Location 2, just as it had done on September 4, 2018. After Vehicle 1 entered, someone closed the warehouse roll-up door, which remained closed until Detective Ernst left approximately one hour later.

43.   **On (Friday) May 24, 2019**, at approximately 04:40 a.m., Auburn Detectives Ernst and Lind conducted surveillance at Location 1 when they observed PAVLOVSKIY arrive at Location 1 in a white Mercedes sedan and park outside the entry door. PAVLOVSKIY exited the vehicle and entered Location 1. At approximately 05:50 a.m., PAVLOVSKIY exited the store and left in the Mercedes. Based upon this activity, six hours before the store was scheduled to open (at 11:00 a.m.), detectives surmised that PAVLOVSKIY was preparing products for shipment, as detectives had observed on other Fridays. Approximately one hour later, shortly before 07:00 a.m., a Hyundai sedan and the Sprinter van (Vehicle 1) arrived and parked in front of Location 1. Detectives could see that PAVLOVSKIY was driving Vehicle 1, and a woman, identified via a Washington State DOL photo as Agniya N. Bobrova, was driving the Hyundai. From approximately 06:56 a.m. until 07:35 a.m., detectives observed Pavlovsky and Bobrova moving boxes and items from inside Location 1 to the back of the van. Bobrova left in her vehicle at around 07:34 a.m. A few minutes later, PAVLOVSKIY left the store, locked the door of Location 1, and left in Vehicle 1.

44.   **On (Friday) June 7, 2019**, at shortly before 07:00 a.m., I surveilled Location 2 (the warehouse) when I observed Alexander PAVLOVSKIY open the right,

Affidavit of Special Agent Ariana Kroshinsky – 20
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   roll-up door, and exit Location 2 driving Vehicle 1 (the Sprinter van). He was gone for
2   approximately one hour. During the hour he was gone, I observed six cars arrive and park
3   in the parking lot in front of Location 2. I saw seven women and one man exit these cars
4   and enter the front glass door of Location 2. I also saw an OfficeMax delivery truck
5   arrive and deliver a package inside Location 2, and I saw one employee carry one US
6   Postal Service box and one DHL box into Location 2. These observations appeared to
7   corroborate our investigative conclusions that Location 2 was serving as a business/office
8   space for this conspiracy.

9          **E.**    **Auburn Police interactions with employees of Innovation Best.**

10       45.    **Interaction May 16, 2019 at Location 1.**  On May 16, 2019, Auburn
11   Detectives Mattson and Ernst visited Location 1 to recover several items of suspected
12   stolen property related to a past case. They noticed several people waiting outside the
13   store before it opened at 11:00 a.m. When they entered Location 1, they noticed the lobby
14   area of the store had no shelves and there was no merchandise displayed for sale to the
15   public. It did not appear that INNOVATION BEST was selling anything from the store,
16   but instead was purchasing products from people coming into the store and then sending
17   the products elsewhere.

18       46.    The detectives observed two females working behind a Plexiglas window.
19   One female was later identified as Cristina Perju (via LeadsOnline). Behind the window,
20   detectives could see several make-shift, semi-permanent walls. The walls appeared to be
21   foil-lined insulation boards held together with duct tape. Detectives observed Perju assist
22   the first people in line, a male and female, who carried large bags filled with what
23   appeared to be bottles of supplements and vitamins. The detectives could not hear the
24   conversation or observe how much money the couple were given for their items. The next
25   two men appeared to be transients. The men had several brand-new canisters of Similac
26   baby formula. The detectives found it odd that two apparently transient men would have
27   several brand-new canisters of baby formula, and that a pawn shop would be interested in
28   buying these items.

Affidavit of Special Agent Ariana Kroshinsky – 21
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

47.     As the two transients waited in line for the couple to finish their transaction, a third male entered the store and approached the two transient males. This male placed a plastic grocery type bag on the ground next to the Similac. Detectives could not see what was inside the bag, but heard the man ask one of the transients to sell the items for him. After this, the unknown male saw the detectives standing nearby, then turned and abruptly left with his bag.

48.     As detectives were speaking with employees, another male entered the building with a large, reusable style grocery bag. The detectives recognized the man as Todd Sherman, who they knew due to his extensive pawn history. From LeadsOnline, detectives found that Sherman has pawned 239 times dating back to February 2017. Typically, his transactions included vitamins, supplements, and Hydro Flask bottles. On May 16, it appeared that Sherman's bag was filled with Rainbow Light vitamins, supplements, and at least two Hydro Flask bottles. A LeadsOnline search later revealed that on May 16, Sherman had sold two Klean Kanteen water bottles, five Hydro Flask water bottles, workout supplements, and vitamins, receiving a total of $217. From the items detectives could identify on LeadsOnline, they calculated that the May 16 items were valued at approximately $575.

49.     **Interaction: May 28, 2019.** On May 28, 2019, Detectives Lind and Ernst returned to Location 1 and observed people entering and leaving the store for approximately one hour. They observed several people enter Location 1 carrying large, reusable grocery bags which appeared to be filled with items, or carrying items in their arms. In one instance Detective Lind and Ernst observed a Kia Optima arrive and back into a parking spot near the entrance to INNOVATION BEST. The detectives observed the Kia driver exit the car and change his shirt. A few minutes later, a Chevrolet Equinox arrived and parked in front of the Kia. The male driver of the Chevrolet exited his vehicle and met the Kia driver. Both males took several items from the Kia's trunk, which detectives were unable to see. Both men entered Location 1 and came out a few minutes later. Detectives observed the Chevrolet driver take several bills from his pants pocket

Affidavit of Special Agent Ariana Kroshinsky – 22
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  and appeared to count it, after which he gave part of the money to the driver of the Kia.
2  When the exchange was done, both men drove away. Based on their observations and
3  knowledge of retail theft and illicit pawnshops, the detectives surmised that the driver of
4  the Kia had asked the driver of the Chevrolet to pawn certain items for him, splitting the
5  proceeds.

6      50.     **Interaction:  May 29, 2019**. On May 29, 2019, Auburn Detectives Ernst
7  and Lind went to Innovation Best in an attempt to recover several items identified by
8  Detective Mattson as stolen property related to a past case. Upon arrival, the detectives
9  found the southernmost door to Innovation Best unlocked and upon entry the entire lobby
10 area was empty, no shelves or merchandise displayed for sale. Detective Ernst and Lind
11 approached the Plexiglas window and were greeted by two females, identified as Diana
12 Bumbu and Cristina Perju.  Perju was asked if she was a clerk or manager and she said
13 she was new, but Bumbu was essentially the manager as she had been working there
14 longer. It was noted both female clerks had thick eastern European accents.  While
15 speaking with them, the detectives observed that Plexiglas window had a printed sign that
16 said, "We buy items $15 and Higher." Just beyond the Plexiglas window they observed
17 several large boxes completely filled with new and unopened bottles of over the counter
18 medications. The walls inside the Plexiglas area appeared to be semi-permanent, held up
19 with tape and constructed of aluminum lined plastic or cardboard. Based on their visits,
20 detectives have observed that neither of the two physical storefronts (Locations 1 and 3)
21 sells products to the public from those physical locations. In our collective experience,
22 this is unlike typical pawn shops, where products are displayed on shelves for customers
23 to walk in, browse, and make purchases.

24      **F.  Amazon Sales and Business Records**

25      51.     In June 2019, investigators received partial sales records from Amazon
26 related to this case, which have been reviewed by an FBI financial analyst. These records
27 have allowed the analyst to prepare a preliminary financial snapshot of the online sales
28 conducted on Amazon by members of the conspiracy, and financial disbursements from

Affidavit of Special Agent Ariana Kroshinsky – 23
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Amazon to bank accounts in the name Alexander PAVLOVSKIY (or derivations of his

2  name). The Amazon records show that THRIFT ELECTRO has had an account with

3  Amazon since 2013. The contact name on the Amazon account is Alex PAVLOVSKIY.

4  Amazon records show two email addresses for this account: a "selling dispute email" of

5  thriftelectro@gmail.com, and a "selling business email" of pavalexiys@comcast.net. One

6  of the seller names associated with THRIFT ELECTRO (the name that appears on an

7  Amazon screen as the seller) was "Bestforyouall."

8      52.  **Bank Information.**  For online sales associated with "Bestforyouall,"

9  Amazon records show payments going from Amazon to an account at Wells Fargo Bank

10  under the name THRIFT ELECTRO, and to two US Bank accounts: one in the name

11  Aleksandr PAVLOVSKIY and one in the name THRIFT ELECTRO. Amazon's sales

12  records show that between 2013 and January 2019, Amazon disbursed a total of

13  $2,127,264 to these three bank accounts for sales registered to "Bestforyouall."

14      53.  Amazon records show a separate business sales account in the name of

15  EURODEALS, LLC. The name on this account is "Aleks/Freeshipforyou." The email

16  associated with this account is eurodeals.llc@gmail.com. Amazon records show a Wells

17  Fargo bank account listed for this account in the name Eurodeals LLC. Amazon's sales

18  records show that, between May 2017 and May 2019, Amazon disbursed a total of

19  $199,173 to EURODEALS, LLC for sales registered to "Freeshipforyou."

20      54.  To get a sense of current items for sale by businesses associated with this

21  conspiracy, I looked at Amazon's website on June 5, 2019, and found a "NEST"

22  thermostat for sale on that day listed as "New," with a sales price of $282, and the seller

23  listed as "Freeshipforyou." The seller, "Freeshipforyou," showed a total of 117 total

24  ratings from apparent buyers on Amazon's website, giving it a 94% positive rating. On

25  June 6, 2019, a Department of Justice associate conducted a search of all items currently

26  for sale on Amazon by the seller "Freeshipforyou." This search revealed that on June 6,

27  Amazon was selling at least 44 items by "Freeshipforyou." Of these, 38 items were listed

28  as "new."  Of the remaining items, one was listed as "item is new but packaging is

Affidavit of Special Agent Ariana Kroshinsky – 24
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

slightly damaged." Five items were listed as "collectible, like new." The total "for sale"
value of all 44 items was $2,122.63.

55.   **Fulfillment Centers.** Amazon has also provided records related to the
fulfillment centers used in this case. Fulfillment centers are essentially warehouses where
Amazon stores items for sale to customers. Amazon stores items shipped by its third-
party sellers such as "Bestforyouall" and "Freeshipforyou" at these fulfillment centers,
which are located around the United States. In June 2019, Amazon provided records for
the entities "Bestforyouall" and Freeshipforyou." On two randomly selected dates, May
23, 2019 and June 5, 2019, "Bestforyouall" had items for sale in at least five different
Amazon.com fulfillment centers: in Fort Worth, Texas; Baltimore, Maryland;
Robbinsville, New Jersey; San Bernardino, California; and Middletown, Delaware.

56.   **Amazon Third-Party Seller Requirements**. I know from training and
experience that Amazon has several requirements in order to be a "seller" on its public
forum. In order to register for a seller's account (which requires a fee depending on the
type of seller an individual or business elects to be), Amazon requires a business name,
address, and current contact information. Amazon also requires an internationally
chargeable credit card (or linked bank account) with a valid billing address, a current and
accurate phone number, and tax identity information.

57.   **Amazon Records for Alexander Pavlovskiy.** Auburn police spoke with
an Amazon Loss Prevention Officer, who informed them that he had reviewed other
Amazon records and observed that Alexander PAVLOVSKIY, in addition to Thrift-
Electro, was the account holder/operator on two other businesses offering items for sale
on Amazon. Those businesses were "Farless Wholesale" and "RT Trading, LLC."
According to Amazon records, these business entities had shipped products to, and stored
products in, at least thirteen Amazon distribution centers around the United States (i.e.,
not in Washington State), and has offered more than 100,000 individual items for sale
since 2013. Estimated revenue from Amazon sales, for entities associated with
Aleksander PAVLOVSKIY, was at least ten million dollars ($10,000,000) since 2013. I

Affidavit of Special Agent Ariana Kroshinsky – 25
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  am awaiting final Amazon records, which will need to be audited, for a total, accurate
2  dollar value.

### G.   US Postal Service Records

4  58.   In June 2019, US Postal Inspection Service (USPIS) Agent Amy Kerkof
5  visited the Kent, Washington U.S. Postal Service facility to review records related to the
6  business entities in this case. She examined packages which had been picked up at the
7  Kent Warehouse (Location 2), and was able to identify tracking numbers and customer
8  identification numbers. Using this information, a USPIS analyst determined that four
9  businesses (identified by USPIS as Innovation Best, BuyTrade, Eurodeals, and Honeybee
10  Marketplace), delivered 10,071 parcels of mail from the Kent warehouse (Location 1)
11  between April 26, 2019 and June 21, 2019, to addresses around the United States.

### H.   Summary of Probable Cause.

13  59.   **Location 2:  Warehouse and Office premises:**  Based on my and other
14  investigators' observations of the Kent warehouse/office space (Location 2), and the
15  totality of circumstances described in this affidavit, I and other investigators have
16  concluded that Location 2 serves as both a storage and consolidation center (where stolen
17  items are stored, consolidated, and logged, likely in batches of similar products), a
18  shipment center (where stolen items are shipped out via USPS, UPS, and other delivery
19  services), and an operations center, where employees conduct the internet-based work
20  described in this paragraph and elsewhere in this affidavit. Among the factors leading to
21  this conclusion is pole camera footage and direct police surveillance (including my own),
22  during which we could see several people regularly entering Location 2 (the
23  warehouse/office) and staying during the day, as if it was a typical office space. In
24  addition, on every Friday for which there was surveillance or pole camera footage,
25  investigators observed Alexander PAVLOSKIY drive the van (Vehicle 1) out of Location
26  2 in the early morning (around 0700), to Location 1, appear to pack the van with
27  products, and return to Location 2, where he would back the van into Location 2, after

1    which, someone would close the door behind him. Investigators never saw anyone else
2    driving Vehicle 1 at any time during this investigation, and never saw Vehicle 1 used for
3    anything else besides transporting property between business locations. Moreover,
4    Amazon records show that this conspiracy has sold tens of thousands of retail products on
5    Amazon.com between 2013 and June 2019. I know that selling items on Amazon requires
6    use of the internet, and requires someone to log each product, create a product
7    description, display photos, provide customer feedback, ensure payment, and numerous
8    other tasks. Selling more than one hundred thousand individual items, as appears to have
9    occurred in this case, requires the work of many people, all of whom require internet
10   access and office space top conduct this business.

11       60.   **Location 4:  Residence of Alexander Pavlovskiy.**  Based upon King
12   County real estate records, which FBI agents and analysts have reviewed,
13   ALEKSANDER PAVLOVSKIY and NADEZHDA PAVLOVSKAYA purchased
14   Location 4 on June 1, 2018 for $450,000. As of June 2019, they carry a mortgage on the
15   residence of $427,500. FBI agents conducted surveillance of Location 4 on June 25, 2019
16   (beginning at approximately 06:20 a.m.) and June 27, 2019 (beginning at approximately
17   06:30 a.m.). On both dates, at approximately 08:30 a.m., agents observed DEMYAN
18   PAVLOVSKIY, the son of Aleksander, leave the residence. Also on both dates, at around
19   10:00 a.m., agents observed ALEKSANDER PAVLOVSKIY leave the residence driving
20   a black Toyota Camry, Washington license plate number ANV0775, which is registered
21   to ALEKSANDER PAVLOVKSIY and NEDEZHDA PAVLOVSKAYA at a different
22   address (12420 SE 264th St, Kent). On both dates, agents observed a maroon Honda
23   Accord parked in the driveway with Washington license BFP1024, which, according to
24   Washington DOL records, is registered to ALEKSANDER PAVLOVSKIY at this
25   residence (Location 4). On June 10, 2019, I conducted surveillance of Location 4, when I
26   observed the black Toyota Camry (WA plate ANV0775) parked on the front side lawn of
27   the residence. Also on June 10, I observed the Honda Accord (WA # BFP1024) parked in
28   the driveway, and I observed NADEZHDA PAVLOVSKAYA standing outside the

Affidavit of Special Agent Ariana Kroshinsky – 27
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    vehicle. Based on all these factors, I believe that Aleksander PAVOLVSKIY uses
2    Location 4 as his primary residence.

3        61.      Based on my training and experience, I know that individuals often
4    maintain business records at their personal residences, including records of net worth,
5    business ownership, business income (reported and unreported, legal and illegal),
6    invoices, receipts, contracts, account statements, loan documents, tax returns, bank
7    records, correspondence, investment documents, leases, mortgage documents, financial
8    reports, and other documents. I know that these records are routinely stored at personal
9    residences for extended periods, as they are frequently used in financial, tax, business,
10    and legal matters, as well as to prove ownership of assets and for other purposes. As a
11    result, I believe that Aleksander PAVLOVSKIY will maintain similar records at his
12    residence, Location 4. Such records are likely to constitute evidence of the crimes under
13    investigation in this case.

14        62.      **Items to be Seized: Retail Products.** In Attachment B, I am seeking
15    authorization to seize "RETAIL PRODUCTS, limited to retail items "new and in original
16    packaging," and including items with "no-resell" stickers and "spider-wrap" as defined in
17    the affidavit. I am unable to be more specific because, as summarized in this affidavit, the
18    nature of this conspiracy involves the daily purchase and sale of hundreds of retail
19    products, and because these retail products differ on a daily basis (as they are bought and
20    sold), and vary widely, to include items such as electronic toothbrushes, aquarium
21    products, automotive air filters, allergy tablets, etc. Auburn detective reviewed
22    LeadsOnline data and attempted to categorize the top retail products bought by the
23    pawnshops involves in this conspiracy. According to their research, these categories
24    appear to be: Vitamin and Health Supplements (non-medicine), Over the Counter
25    Medication, Tools, Home Improvement & Furnishings, Personal Care Products, Makeup
26    & Perfume, Pet Supplies, Sports Equipment & Supplies, Automobile Products, Infant
27    Products, Home and Other Electronics, Small Kitchen Appliances, Computers & audio-
28    visual Equipment, Toys, and Clothing & Accessories. Therefore I am including these

Affidavit of Special Agent Ariana Kroshinsky – 28
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  categories in Attachment B, "Items to be Seized." Moreover, because the entire enterprise

2  involves the purchase and sale of stolen retail products, all of which are new and in

3  original packaging, I am limiting our search request to retail items "new and in original

4  packaging." I believe that probable cause exists to seize all such items based upon the

5  totality of evidence outlined in this affidavit.

6  **IV.      SEARCH AND SEIZURE OF DIGITAL DEVICES,**

7  **COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC**

**ANALYSIS**

8

9  **A.      Introduction**

10      63.      As described above and in Attachment B, this application seeks permission

11  to search for evidence, fruits and/or instrumentalities that might be found at Locations 1,

12  2, 3, and 4, and in Vehicle 1, in whatever form. One form in which the evidence, fruits,

13  and/or instrumentalities are likely to be found is data stored on digital devices such as

14  computers, iPads, mobile phones, computer hard drives, or other electronic storage

15  media. Thus, the warrant applied for would authorize the seizure of digital devices or

16  other electronic storage media or, potentially, the copying of electronically stored

17  information from digital devices or other electronic storage media, all under Rule

18  41(e)(2)(B). "Electronic Storage media," as used in this affidavit, refers to any physical

19  object upon which data can be recorded.  Examples include hard disks, RAM, floppy

20  disks, flash memory, CD-ROMs, and other magnetic or optical media.

21      64.      Based upon my review of the evidence gathered in this investigation, my

22  review of data and records, information received from other agents and computer

23  forensics examiners, and my training and experience, I submit that if a digital device or

24  other electronic storage media is found at Locations 1, 2, 3, and 4, or Vehicle 1, there is

25  probable cause to believe that evidence, fruits, and/or instrumentalities of the crimes set

26  forth in paragraph 9, above, will be stored on those digital devices or other electronic

27  storage media. I believe digital devices or other electronic storage media are being used

28  to commit these crimes because the totality of the investigation has led me to believe that

Affidavit of Special Agent Ariana Kroshinsky – 29
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  members of the conspiracy use computers to carry out their daily, criminal activity. For
2  example, the investigation has shown that when people sell products at INNOVATION
3  BEST and THRIFT ELECTRO, store employees log the purchases and sales into an
4  electronic database, LeadsOnline, which is an internet-based system, requiring the use of
5  electronic devices for internet connectivity. Second, Amazon records show that members
6  of the conspiracy, operating under the seller names "Freeshipforyou" and "Bestforyouall"
7  have sold more than one hundred thousand items on Amazon.com between 2013 and
8  2019. These internet sales require members of the conspiracy to prepare sales documents
9  for Amazon, such as a product description, a sales price, the condition of the product, and
10 a contact email, all of which must be sent to Amazon via electronic means. Fourth,
11 Amazon.com records show that the businesses under investigation have emails with
12 Amazon, as specified above, supporting the reasonable inference that Amazon and buyers
13 on Amazon communicate with members of the conspiracy when they have questions
14 about the products, have complaints, wish to return a product, or for other reasons.

15        65.       Due to what I know to be the storage capacity of electronic devices, there is
16 probable cause to believe that evidence, fruits, and/or instrumentalities of the crimes
17 specified in Paragraph 9 exists and will be found on digital device or other electronic
18 storage media at all locations because:

19              a.       Based on my knowledge, training, and experience, I know that
20                       computer files or remnants of such files can be preserved (and
                         consequently also then recovered) for months or even years after
21                       they have been downloaded onto a storage medium, deleted, or
22                       accessed or viewed via the Internet.  Electronic files downloaded to
                         a digital device or other electronic storage medium can be stored for
23                       years at little or no cost.  Even when files have been deleted, they
24                       can be recovered months or years later using forensic tools.  This is
                         so because when a person "deletes" a file on a digital device or other
25                       electronic storage media, the data contained in the file does not
26                       actually disappear; rather, that data remains on the storage medium
                         until it is overwritten by new data.

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the digital device or other electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

66.  **Forensic evidence.**  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices or other electronic storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any digital devices or other electronic storage media located at Locations 1, 2, 3, and 4, and in Vehicle 1, because:

a.  Stored data can provide evidence of a file that was once on the digital device or other electronic storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the digital device or other electronic storage media that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information that can reveal information such as online nickname and passwords.  Operating

Affidavit of Special Agent Ariana Kroshinsky – 31
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   systems can record additional information, such as the history of
2   connections to other computers, the attachment of peripherals, the
    attachment of USB flash storage devices or other external storage
3   media, and the times the digital device or other electronic storage
4   media was in use. Computer file systems can record information
    about the dates files were created and the sequence in which they
5   were created.

6
    b.      As explained herein, information stored within a computer and other
7           electronic storage media may provide crucial evidence of the "who,
8           what, why, when, where, and how" of the criminal conduct under
            investigation, thus enabling the United States to establish and prove
9           each element or alternatively, to exclude the innocent from further
10          suspicion.  In my training and experience, information stored within
            a computer or storage media (e.g., registry information,
11          communications, images and movies, transactional information,
12          records of session times and durations, internet history, and anti-
            virus, spyware, and malware detection programs) can indicate who
13          has used or controlled the computer or storage media. This "user
14          attribution" evidence is analogous to the search for "indicia of
            occupancy" while executing a search warrant at a residence.  The
15          existence or absence of anti-virus, spyware, and malware detection
16          programs may indicate whether the computer was remotely
            accessed, thus inculpating or exculpating the computer owner and/or
17          others with direct physical access to the computer.  Further,
18          computer and storage media activity can indicate how and when the
            computer or storage media was accessed or used.  For example, as
19          described herein, computers typically contain information that log:
20          computer user account session times and durations, computer
            activity associated with user accounts, electronic storage media that
21          connected with the computer, and the IP addresses through which
22          the computer accessed networks and the internet.  Such information
            allows investigators to understand the chronological context of
23          computer or electronic storage media access, use, and events relating
24          to the crime under investigation.  Additionally, some information
            stored within a computer or electronic storage media may provide
25          crucial evidence relating to the physical location of other evidence
26          and the suspect. For example, images stored on a computer may both
            show a particular location and have geolocation information
27          incorporated into its file data. Such file data typically also contains
28          information indicating when the file or image was created. The

Affidavit of Special Agent Ariana Kroshinsky – 32
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.      A person with appropriate familiarity with how a digital device or other electronic storage media works can, after examining this forensic evidence in its proper context, draw conclusions about how the digital device or other electronic storage media were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device or other electronic storage media that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a digital device or other electronic storage media was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

Affidavit of Special Agent Ariana Kroshinsky – 33
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.   Past Efforts to Obtain Electronically Stored Information.**

67.   Because of the nature of the evidence that I am attempting to obtain and the nature of the investigation, I have not made any prior efforts to obtain the evidence based on the consent of any party who may have authority to consent.  I believe, based upon the nature of the investigation and the information I have received, that if the targets of this investigation become aware of the investigation in advance of the execution of a search warrant, they may attempt to destroy any potential evidence, whether digital or non-digital, thereby hindering law enforcement agents from the furtherance of the criminal investigation.

**C.   Risk of Destruction of Evidence.**

68.   I know, based on my training and experience, that digital information can be very fragile and easily destroyed.  Digital information can also be easily encrypted or obfuscated such that review of the evidence would be extremely difficult, and in some cases impossible.  If an encrypted computer is either powered off or if the user has not entered the encryption password and logged onto the computer, it is likely that any information contained on the computer will be impossible to decipher.  If the computer is powered on, however, and the user is already logged onto the computer, there is a much greater chance that the digital information can be extracted from the computer.  This is because when the computer is on and in use, the password has already been entered and the data on the computer is accessible.  However, giving the owner of the computer time to activate a digital security measure, pull the power cord from the computer, or even log off of the computer could result in a loss of digital information that could otherwise have been extracted from the computer.

**D.   Seizing Computers and Electronic Devices at Locations 1, 2, and 3, and Vehicle 1, as Instrumentalities of the Crimes.**

69.   This is an internet-based conspiracy that is permeated with fraud and illegality. As a result, there is probable cause to believe that computers and electronic

Affidavit of Special Agent Ariana Kroshinsky – 34
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  devices found at Locations 1, 2, and 3, and in Vehicle 1, are instrumentalities of the

2  crimes specified in paragraph above (conspiracy, transportation of stolen property, sale of

3  stolen property, and money laundering). The investigation summarized above has led me

4  to believe that members of the conspiracy use computers to carry out their daily, criminal

5  activity in at least three respects. First, the investigation has shown that when people sell

6  their products to employees at INNOVATION BEST and THRIFT ELECTRO, store

7  employees log the purchases and sales into an electronic database, LeadsOnline, that is an

8  internet-based system, requiring the use of electronic devices for internet connectivity.

9  Second, Amazon.com records show that members of the conspiracy, operating under the

10  seller names "Freeshipforyou" and "Bestforyouall," among others, have sold tens of

11  thousands of items on Amazon going back to 2013. These internet sales require members

12  of the conspiracy to prepare sales documents for Amazon, such as a product description,

13  a sales price, the condition of the product, and a contact email, all of which must be

14  communicated to Amazon by electronic means. Third, in a business moving tens of

15  thousands of items, electronic, backup business records would be required, or are

16  commonly used. These backups would likely consist of inventory, sales records, financial

17  transactions, electronic profiles, electronic storefronts, banking information, and business

18  records. These backups would need to be stored, in conjunction with the electronics

19  either in daily use, or via independent methods such as external hard drives, USB's, or

20  paper files. Locations 1, 2, and 3, and Vehicle 1, are business locations for this

21  conspiracy, and therefore, computers and electronic devices found at these locations are

22  likely to be permeated with fraud and used as instrumentalities of the crimes under

23  investigation.

24      **E.      Request for Authority to Conduct Off-Site Search of Computers and
25               Electronic Devices Seized from Location 4.**

26      70.     Because several people share Location 4 as a residence, it is possible that

27  Location 4 will contain digital devices or other electronic storage media that are

28  predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If

Affidavit of Special Agent Ariana Kroshinsky – 35
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  agents conducting the search nonetheless determine that it is possible that the things

2  described in this warrant could be found on those computers, this application seeks

3  permission to search and if necessary to seize those computers as well. It may be

4  impossible to determine, on scene, which computers contain the things described in this

5  warrant. Accordingly, as to Location 4 only, agents will use the following processes:

6        a. Upon securing Location 4, the search team will conduct an initial
7           review of any digital devices or other electronic storage media located at
           Location 4 that are capable of containing data or items that fall within
8           the scope of Attachment B to this Affidavit, to determine if it is possible
9           to secure the data contained on these devices onsite in a reasonable
           amount of time and without jeopardizing the ability to accurately
10          preserve the data.

11       b. In order to examine the electronically stored information ("ESI") in a
12          forensically sound manner, law enforcement personnel with appropriate
          expertise will attempt to produce a complete forensic image, if possible
13          and appropriate, of any digital device or other electronic storage media
14          that is capable of containing data or items that fall within the scope of
15          Attachment B to this Affidavit.

16       c. A forensic image may be created of either a physical drive or a logical
17          drive. A physical drive is the actual physical hard drive that may be
          found in a typical computer. When law enforcement creates a forensic
18          image of a physical drive, the image will contain every bit and byte on
19          the physical drive. A logical drive, also known as a partition, is a
          dedicated area on a physical drive that may have a drive letter assigned
20          (for example the c: and d: drives on a computer that actually contains
21          only one physical hard drive).  Therefore, creating an image of a logical
          drive does not include every bit and byte on the physical drive. Law
22          enforcement will only create an image of physical or logical drives
23          physically present on or within the subject device. Creating an image of
24          the devices located at the search locations described in Attachments A-1
          to 5 will not result in access to any data physically located elsewhere.
25          However, digital devices or other electronic storage media at Location 4
26          that have previously connected to devices at other locations may contain
          data from those other locations.

27

28

Affidavit of Special Agent Ariana Kroshinsky – 36
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d. If, based on their training and experience, and the resources available to them at the search site, the search team determines it is not practical to make an on-site image within a reasonable amount of time and without jeopardizing the ability to accurately preserve the data, then the digital devices or other electronic storage media will be seized and transported to an appropriate law enforcement laboratory to be forensically imaged and reviewed.

71.     In lieu of removing all of these items from Location 4, it is sometimes possible to make an image copy of the data on the digital devices or other electronic storage media, onsite. Generally speaking, imaging is the taking of a complete electronic picture of the device's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the item, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine the respective digital devices and/or electronic storage media to obtain evidence. Computer hard drives, digital devices and electronic storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements.  Digital devices or other electronic storage media can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the

items off-site and reviewing them in a controlled environment will allow examination with the proper tools and knowledge.

c.   Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of electronic storage media formats and on a variety of digital devices that may require off-site reviewing with specialized forensic tools.

72.   Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging, or otherwise copying digital devices or other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to this Affidavit, and will specifically authorize a later review of the media or information consistent with the warrant.

## V.   REQUEST FOR SEALING

73.   It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application, affidavit and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation, and therefore, disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto, will jeopardize the investigation. Disclosure of these materials would give the target of the investigation an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution.

//
//
//
//
//

Affidavit of Special Agent Ariana Kroshinsky – 38
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# VI.   CONCLUSION

74.   Based on the above, there is probable cause to believe that evidence, fruits, and instrumentalities of the crimes of interstate transportation in stolen goods, sale of stolen goods in interstate commerce, conspiracy to commit these offenses, and money laundering, in violation of 18 U.S.C. § 2314, 2315, 371, and 1956, which are more fully described in Attachment B, exist and are present in the locations to be searched and described in Attachments A-1 to 5, as well as on any digital devices or other electronic storage media found at these locations. I therefore request that the court issue a warrant authorizing a search of the Locations and Vehicle specified above (in paragraphs 10-14), as well as any computers, digital devices, and electronic storage media located therein, for the items more fully described in Attachment B hereto, incorporated herein by reference, and the seizure of any such items found therein.

ARIANA KROSHINSKY, Affiant
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN before me this 8th day of July, 2019

MARY ALICE THEILER
United States Magistrate Judge

Affidavit of Special Agent Ariana Kroshinsky – 39
USAO# 2018R01308

1

2

## ATTACHMENT A–1
### Location 1 to be Searched

3 **The Business Premises of 25628 and 25630 102nd Pl SE, Kent, Washington**

4 Location 1 is located at 25628 and 25630 102nd Pl SE, Kent, Washington. It consists of

5 two-adjoined units within a multi-business, strip-mall complex. Location 1 has two

6 access doors and three exterior windows facing a parking lot. Above the left entrance

7 door are the numbers 25628, and above the right entrance door, the numbers 25630.

8 Further above the entrance doors are two signs. The sign to the left reads, in red lettering,

9 "Hardware," with a smaller sign beneath it reading "Store." The sign to the right reads, in

10 gold lettering, "Gold and Silver," with a smaller sign beneath it reading, "We Buy." To

11 the left of Location 1, in the corner of the strip mall, is a business labeled "Carriage

12 Square Bar & Grill." To the right of Location 1 is a barber shop with a sign listing it as

13 "Emily Barber." A photo of Location 1 is below.

14

15



16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment A–1 (Location 1) – 1
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A–2**
**Location 2 to be Searched**

**A Storage and Office Premises located at 22710 72nd Avenue South, Suite 109, Kent, Washington 98032**

Location 2 is a storage facility and adjacent office premises. It is a grey, one-story unit at the eastern end of a longer building. Location 2, the unit to be searched, has two rolling doors permitting delivery trucks to back up and load and unload goods. The left side roll-up door is off the ground and permits large trucks to back up to it. The right side roll-up door is accessed via a ramp, allowing vehicles to back into the storage facility and close the door behind them. These rolling doors are visible from South 228th Street. To the right of the delivery doors is a one-story office space, entered via a glass door with a white frame.  To the right of this entry door are several windows. There is a small parking lot in front of Location 2, with space for approximately ten vehicles. A photo of location 2 is below,



Attachment A–2 (Location 2) – 1
USAO# 2018R01308

### **ATTACHMENT A–3**
**Location 3 to be Searched**

**A Business Location at 20 Southwest 7th Street, Unit J, Renton, Washington 98057**
Location 3 is one unit within a single-story, retail strip mall, known as the "Curran business complex." Location 3 has a single, tinted-glass entry door facing an east parking lot. Next to the front door is a set of ground to ceiling tinted windows which abut the front sidewalk. A sign above the entry door reads, in red lettering, "Thrift-Electro." Below this, a smaller sign reads, "We Buy," in yellow lettering within a black oval. Above the front door is a small sticker with the letter J in black color. To the right of Location 3 is an unrelated unit with a sign labeled, "A-Health." A photo of location 3 is below.



Attachment A–3 (Location 3) – 1
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

**ATTACHMENT A–4**
**Location 4 to be Searched**

3 **A single-family residence located at 30323 – 110th Place S.E., Auburn, Washington**

4 **98092.**  Location 4 is a two-story, four-bedroom, single-family residence, painted

5 grey/green in color with white trim and a grey asphalt roof. From the street, a driveway

6 leads to a two-car, white garage door, which faces the street. To the right of the garage

7 door is a porch that runs from the garage to the right side of the house. The porch has

8 several white pillars and a white fence. The front door, white in color, is in the center of

9 the front porch. Above the front porch are three dormers and windows. For this location,

10 the search is to include all rooms, attics, basements, and all other parts therein, and

11 surrounding yard, garages, storage rooms, or outbuildings of any kind, attached or

12 unattached, on Location 4. A photo of Location 4 is below.

13

14

15

16

17

18

19



20

21

22

23

24

25

26

27

28

Attachment A–4 (Location 4) – 1
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B (LOCATION 4)
### ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed); photocopies or other photographic form; and electrical, electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact discs, CD-ROMs, DVDs, optical discs, Zip cartridges, printer buffers, smart cards, electronic notebooks, mobile phones, or any other electronic storage medium) that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2314 (Transportation of stolen goods in interstate commerce); 18 U.S.C. § 2315 (Sale of stolen goods in interstate commerce); 18 U.S.C. § 371 (Conspiracy); and 18 U.S.C. §§ 1956 (Money laundering), including:

1.   **DOCUMENTS and RECORDS,** whether handwritten, printed, typed, or contained in a computer or electronic memory, to include:

    a.    Business records for THRIFT ELECTRO, INNOVATION BEST, EURODEALS, LLC., BUY-TRADE, (or derivations of this name such as BY-TRADE, etc.), "Freeshipforyou," Bestforyouall," Farless Wholesale, RT Trading, LLC, Honeybee Marketplace, and any other pawnshop or business;

    b.    purchase and sales records for retail goods;

    c.    types, amounts, and prices of retail products bought and sold, as well as dates, places, and amounts of specific transactions;

    d.    records related to people from whom retail products were bought (including names, addresses, phone numbers, or other identifying information);

    e.    bank records, checks, credit card bills, account information, and other financial records;

    f.    tax returns, tax records, and documents prepared for tax purposes;

    g.    communications with Amazon.com;

Attachment B – 1
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

h.    inventories, delivery records, shipping labels, logs and records related to United Parcel Service (UPS), the US Postal Service, or any other delivery service or third party mailing service (such as Stamps.com, etc.), and mailing materials, including but not limited to boxes, envelopes, labels, packages, and similar materials;

i.    customer lists and communications with customers;

j.    indicia of occupancy and ownership of the premises and vehicles described in this search warrant including, but not limited to, utility bills, telephone bills, cancelled envelopes, registration certificates, vehicle titles, and leasing and rental records.

2.    **FINANCIAL RECORDS**:  Financial records of THRIFT ELECTRO, INNOVATION BEST, EURODEALS, LLC., BUY-TRADE (or derivations of this name such as BY-TRADE, etc.),"Freeshipforyou," Bestforyouall," Farless Wholesale, RT Trading LLC, Honeybee Marketplace, and any other businesses, including but not limited to: records relating to the purchase and sale of retail products, records of funds received from Amazon.com, bank records relating to accounts owned or controlled by Aleksander PAVLOVSKIY (or derivations of that name, including but not limited to Alex PAVLOVSKIY and A. PAVLOVSKIY); records relating to receipts and disbursements of cash, and records related to income and expenses.

3.    **RETAIL PRODUCTS,** limited to new and in original packaging retail items, and including items with "no-resell" stickers and "spider-wrap" as defined in the affidavit, and including the following categories of products: Vitamin and Health Supplements (non-medicine), Over the Counter Medication, Tools, Home Improvement & Furnishing items, Personal Care Products, Makeup & Perfume, Pet Supplies, Sports Equipment & Supplies, Automobile Products, Infant Products, Home and Other Electronics, Small Kitchen Appliances, Computers & Audio-Visual Equipment, Toys, and Clothing & Accessories.

4.    **MONEY,** including U.S. currency, negotiable instruments, securities, or other tangible or intangible property of value.

Attachment B – 2
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.   **DIGITAL DEVICES**[1] or other electronic storage media[2] and/or their components, which include:

a.   Any digital device or other electronic storage media capable of being used to commit, further, or store evidence of the offenses listed above;

b.   Any digital devices or other electronic storage media used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, plotters, encryption devices, and optical scanners;

c.   Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

d.   Any documentation, operating logs and reference manuals regarding the operation of the digital device or other electronic storage media or software;

e.   Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

f.   Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

---

[1] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.

[2] Electronic Storage media is any physical object upon which electronically stored information can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

g. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

6. Any digital devices or other electronic storage media that were or may have been used as a means to commit the offenses described on the warrant.

7. For any digital device or other electronic storage media upon which electronically stored information that is called for by this warrant may be contained, or that may contain things otherwise called for by this warrant:

a. evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

e. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

f. evidence of the times the digital device or other electronic storage media was used;

g. passwords, encryption keys, and other access devices that may be necessary to access the digital device or other electronic storage media;

Attachment B – 4
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

h.   documentation and manuals that may be necessary to access the digital device or other electronic storage media or to conduct a forensic examination of the digital device or other electronic storage media;

i.   contextual information necessary to understand the evidence described in this attachment.

8. Records evidencing the use of an Internet Protocol address to communicate with Amazon.com and to record and log data, including:

a.   routers, modems, and network equipment used to connect computers to the Internet;

b.   records of Internet Protocol addresses used;

c.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

**THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, FOR THE PURPOSE OF PRODUCING AN ON-SITE, COMPLETE FORENSIC IMAGE OF THE CONTENTS OF SAID MEDIA, AND FOR CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES, IF IT IS NOT PRACTICAL TO MAKE AN ON-SITE IMAGE IN A REASONABLE AMOUNT OF TIME.**

Attachment B – 5
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## ATTACHMENT A–5
### Vehicle to be Searched

**Vehicle 1:**  A Grey, Mercedes Benz, "Sprinter" model transport van, Washington State license plate number C20127G, VIN # WD4PE8DD8GP234633.

Attachment A–5 (Vehicle) – 1
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B
## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed); photocopies or other photographic form; and electrical, electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact discs, CD-ROMs, DVDs, optical discs, Zip cartridges, printer buffers, smart cards, electronic notebooks, mobile phones, or any other electronic storage medium) that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2314 (Transportation of stolen goods in interstate commerce); 18 U.S.C. § 2315 (Sale of stolen goods in interstate commerce); 18 U.S.C. § 371 (Conspiracy); and 18 U.S.C. §§ 1956 (Money laundering), including:

1. **DOCUMENTS and RECORDS**, whether handwritten, printed, typed, or contained in a computer or electronic memory, to include:

    a.    Business records for THRIFT ELECTRO, INNOVATION BEST, EURODEALS, LLC., BUY-TRADE, (or derivations of this name such as BY-TRADE, etc.), "Freeshipforyou," Bestforyouall," Farless Wholesale, RT Trading, LLC, Honeybee Marketplace, and any other pawnshop or business;

    b.    purchase and sales records for retail goods;

    c.    types, amounts, and prices of retail products bought and sold, as well as dates, places, and amounts of specific transactions;

    d.    records related to people from whom retail products were bought (including names, addresses, phone numbers, or other identifying information);

    e.    bank records, checks, credit card bills, account information, and other financial records;

    f.    tax returns, tax records, and documents prepared for tax purposes;

    g.    communications with Amazon.com;

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

    h.    inventories, delivery records, shipping labels, logs and records related to United Parcel Service (UPS), the US Postal Service, or any other delivery service or third party mailing service (such as Stamps.com, etc.), and mailing materials, including but not limited to boxes, envelopes, labels, packages, and similar materials;

    i.    customer lists and communications with customers;

    j.    indicia of occupancy and ownership of the premises and vehicles described in this search warrant including, but not limited to, utility bills, telephone bills, cancelled envelopes, registration certificates, vehicle titles, and leasing and rental records.

2.    **FINANCIAL RECORDS:**  Financial records of THRIFT ELECTRO, INNOVATION BEST, EURODEALS, LLC., BUY-TRADE (or derivations of this name such as BY-TRADE, etc.),"Freeshipforyou," Bestforyouall," Farless Wholesale, RT Trading LLC, Honeybee Marketplace, and any other businesses, including but not limited to: records relating to the purchase and sale of retail products, records of funds received from Amazon.com, bank records relating to accounts owned or controlled by Aleksander PAVLOVSKIY (or derivations of that name, including but not limited to Alex PAVLOVSKIY and A. PAVLOVSKIY); records relating to receipts and disbursements of cash, and records related to income and expenses.

3.    **RETAIL PRODUCTS,** limited to new and in original packaging retail items, and including items with "no-resell" stickers and "spider-wrap" as defined in the affidavit, and including the following categories of products: Vitamin and Health Supplements (non-medicine), Over the Counter Medication, Tools, Home Improvement & Furnishing items, Personal Care Products, Makeup & Perfume, Pet Supplies, Sports Equipment & Supplies, Automobile Products, Infant Products, Home and Other Electronics, Small Kitchen Appliances, Computers & Audio-Visual Equipment, Toys, and Clothing & Accessories.

4.    **MONEY,** including U.S. currency, negotiable instruments, securities, or other tangible or intangible property of value.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
1      **5.**     **DIGITAL DEVICES**[1] or other electronic storage media[2] and/or their
2  components, which include:

           a.    Any digital device or other electronic storage media capable of being used to commit, further, or store evidence of the offenses listed above;

           b.    Any digital devices or other electronic storage media used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, plotters, encryption devices, and optical scanners;

           c.    Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

           d.    Any documentation, operating logs and reference manuals regarding the operation of the digital device or other electronic storage media or software;

           e.    Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

           f.    Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

---

[1] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.

[2] Electronic Storage media is any physical object upon which electronically stored information can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

g.  Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

6.  Any digital devices or other electronic storage media that were or may have been used as a means to commit the offenses described on the warrant.

7.  For any digital device or other electronic storage media upon which electronically stored information that is called for by this warrant may be contained, or that may contain things otherwise called for by this warrant:

a.  evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

e.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

f.  evidence of the times the digital device or other electronic storage media was used;

g.  passwords, encryption keys, and other access devices that may be necessary to access the digital device or other electronic storage media;

Attachment B – 4
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

h.   documentation and manuals that may be necessary to access the digital device or other electronic storage media or to conduct a forensic examination of the digital device or other electronic storage media;

i.   contextual information necessary to understand the evidence described in this attachment.

8.   Records evidencing the use of an Internet Protocol address to communicate with Amazon.com and to record and log data, including:

a.   routers, modems, and network equipment used to connect computers to the Internet;

b.   records of Internet Protocol addresses used;

c.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

**THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT FOR THE FOLLOWING LOCATIONS:**

- **Location 1:  25628 and 25630 102nd Pl SE, Kent, Washington**
- **Location 2:  22710 72nd Avenue South, Suite 109, Kent, Washington**
- **Location 3:  20 Southwest 7th Street, Unit J, Renton, Washington**
- **Vehicle 1:   A Grey, Mercedes Benz, "Sprinter" model transport van, Washington State license plate number C20127G, VIN # WD4PE8DD8GP234633**

**NOT ONLY TO THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES**

Attachment B – 5
USAO# 2018R01308

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970